## Elmer E. Sebree, Appellee, v. D. W. Thomas, Appellant.

1. NEGOTIABLE INSTRUMENTS—*when check need not be presented for payment.* Where payment upon a check has been stopped presentment of payment is not essential to recovery.

2. INSTRUCTIONS—*when containing abstract propositions of law cannot be complained of.* A party cannot complain that instructions containing abstract propositions of law were given at the instance of his adversary where he likewise has caused the court to give instructions containing abstract propositions of law.

3. INSTRUCTIONS—*approved form as to province of jury.* An instruction upon this subject as follows approved:

"The jury are instructed that they are the judges of the credit

that ought to be given to the testimony of the different witnesses, and they are not bound to believe anything to be a fact, because a number of witnesses have stated it to be so, provided the jury believed from all the evidence that as to such matters such witness or witnesses are mistaken, or has or have knowingly testified falsely.''

Action commenced before justice of the peace. Appeal from the Circuit Court of Fulton county; the HON. R. J. GRIER, Judge, presiding. Heard in this court at the October term, 1911. Affirmed. Opinion filed December 13, 1911.

CHIPERFIELD & CHIPERFIELD, for appellant.

O. J. BOYER, for appellee.

MR. JUSTICE THOMPSON delivered the opinion of the court.

This action was begun before a police magistrate of the city of Canton, by Elmer E. Sebree against D. W. Thomas, to recover the amount of a check for $160 given by defendant to the plaintiff. The case was appealed to the circuit court, where on a trial the jury returned a verdict in favor of the plaintiff for the amount of the check. Judgment was rendered on the verdict for the plaintiff, and the defendant appeals.

The evidence shows that appellee was the owner of a horse that appellant desired to purchase, and that appellant and Frank Rafferty went to the farm of appellee to buy the horse which appellant understood appellee was fitting for market. They found appellee in his barn and asked him if the horse was in shape to sell. Appellee led the horse out and priced it at $185 and finally offered to take $165. Appellant declined to pay the price and started away. They came back and offered $160 which appellee accepted, and appellant gave a check for that sum and took the horse away. There is a sharp conflict in the evidence as to what was said during the negotiations. Appellant and Rafferty testify that appellee said that he would guarantee the horse's wind was good; that the horse had had the dis-

temper; that there was a good field and they could take him and ride and jump him but he would not let his, appellee's, boy ride him; appellant said he was not riding horses; that appellant said "If you are sure about his wind, I will lead the horse home with me, and will pay you for him and if his wind ain't good I will send him back here," and that they took the horse to town, a distance of three miles. They put a pair of shoes on him the same day, and after dinner they hitched the horse up and found he was wind broken. Appellant then stopped payment of the check and sent the horse back to the farm, but appellee declined to receive him. Rafferty corroborates appellant.

Appellee testified that when appellant first came, appellee ran the horse out to the road and back, appellant following the horse with a whip; and then Rafferty ran the horse to the road and back three or four times with appellant still following him with a whip; that appellant then drove away but came back and offered $160 which appellee accepted. Appellant then handed appellee the check and took the horse by the lead strap and got into his buggy; that appellant then said "Is this horse's wind good" and appellee said "It is good as far as I know," that after that appellant wanted the boy to ride the horse and appellee said, "No, he wont ride him, I will hook him up, or take the old black horse in the barn and wind him for you," that appellant replied "No, if he is all right when we get to the corner (about a quarter of a mile away) I will take him."

Appellee contends that this all occurred after the sale had been made and the horse delivered to appellant; he is corroborated by his son as to what occurred after appellant came back the second time.

Where the evidence is so conflicting, and so nearly equal as to whether there was a warranty or whether the appellant took the horse on his own judgment after seeing it tried, it became a question for the jury to decide what the fact was, and unless there is error in the

instructions this court would not be justified in disturbing the verdict and judgment.

The check was delivered to the appellee in the forenoon of the day of its date. Early in the afternoon of that day appellant notified appellee that he had stopped payment of the check at the bank on which it was drawn, and that it would not be paid. Because of such notice appellee did not present the check for payment. Appellant now contends that because it was not presented for payment, that the maker is discharged—that no action can be maintained thereon without showing presentment and refusal to pay by the bank.

If presentment of a check will be of no benefit to the maker, failure to present will be excused. 5 Am. & Eng. Ency. of Law, 1046. The drawer of a check, by stopping payment at the bank, relieves the payee, as against himself, from any necessity of presentment and notice of non-payment. 5 Am. & Eng. Ency. of Law, 1049. The appellant by stopping payment relieved the appellee from the necessity of presenting the check.

The instructions on both sides consist of abstract propositions of law, mostly concerning the credibility of witnesses and the definition of a warranty. They were all applicable to the case, and while they were abstract propositions, they were not misleading. Appellant may not complain that the instructions given for the appellee were all abstract propositions, when he asked the same kind of instructions on the same questions. Special complaint is made concerning the sixth instruction given for the appellee which is:

"The jury are instructed that they are the judges of the credit that ought to be given to the testimony of the different witnesses, and they are not bound to believe anything to be a fact, because a number of witnesses have stated it to be so, provided the jury believe from all the evidence, that as to such matters such wit-

ness or witnesses are mistaken, or has or have knowingly testified falsely.''

This instruction was passed upon and approved in Devaney v. Otis Elevator Co., 251 Ill. 28.

Finding no error in the case the judgment is affirmed.

*Affirmed.*